```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 13, 2009
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FRANKLYN MITCHELL,
                    Petitioner,                    09 Civ. 7029 (PGG)

   -against-                          MEMORANDUM ORDER

COLONEL DOMINIC ORSINO, et al.,
                    Respondents.
----------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:[1]

      Petitioner Franklyn Mitchell challenges his confinement by United States Immigration and Customs Enforcement ("ICE") and his continued detention without an individualized bail hearing while his removal proceedings are pending.  Petitioner moves this Court to grant his petition for a writ of habeas corpus and mandamus, pursuant to 28 U.S.C. §§ 1361 and 2241.  The Court heard argument on August 12, 2009, following Petitioner's filing of an Order to Show Cause pursuant to 28 U.S.C. § 2243.  For the reasons that follow, Petitioner's writ of habeas corpus is GRANTED in part.  Respondents are directed to give Petitioner a prompt, individualized bail hearing.  Respondents are also restrained from transferring Petitioner outside of this Court's jurisdiction during the pendency of his bond proceedings, including the hearing and any appeal therefrom.

## BACKGROUND

**I. Mandatory Detention Under 8 U.S.C. § 1226(c)**

      In 1996 Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546.  IIRIRA contains a

---

[1]     Judge Paul G. Gardephe signed the Order to Show Cause and, given the urgency of the matter, made the Order returnable before me, sitting as the Part I Judge.

mandatory detention provision, § 236(c) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226(c).  Implementation of Section 1226(c) was deferred for two years, during which time detention was governed by § 303(b)(3), otherwise known as the Transition Period Custody Rules ("TPCR").  The TPCR provided for individualized bond hearings for some aliens deportable for having committed certain crimes; the immigration judge could set bond after finding that the alien was not a danger to the community and was likely to appear for future proceedings.  See Garcia v. Shanahan, 615 F. Supp. 2d 175, 178 (S.D.N.Y. 2009); Thomas v. Hogan, No. 08 Civ. 0417, 2008 WL 4793739, at *1 (M.D. Pa. Oct. 31, 2008).

      The TPCR expired on October 9, 1998, and the mandatory detention provision of 8 U.S.C. § 1226(c) became effective.  That provision states:

    (c) Detention of criminal aliens

        (1) Custody

            The Attorney General shall take into custody any alien who—

        (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

        (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

        (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or

        (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

    when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

See 8 U.S.C. § 1226(c) (emphasis added).  The mandatory detention provision is not applied retroactively to aliens released from custody prior to the expiration of the TPCR. See Thomas, 2008 WL 4793739, at *4 (collecting cases).

This case involves the interpretation of the phrase "when the alien is released" and whether it refers to release from custody for any offense after the effective date of § 1226(c), or whether it refers to release from custody for only the enumerated offenses within the statute after the effective date of § 1226(c).

## II. Factual Background

Petitioner is a Jamaican native and citizen who has been a lawful permanent resident of the United States since December 15, 1987. (See Gov't August 11, 2009 Letter Brief ("Gov't") Ex. 1; Petition for Writ of Habeas Corpus ("Petition") ¶ 1.)  In 1993 Petitioner was convicted of possession with the intent to sell or deliver cocaine in North Carolina, and on February 14, 1994, he was convicted of attempted murder in the second degree in New York state court. (Petition ¶ 12.)  Petitioner was released from custody on these charges prior to the effective date of § 1226(c). (Id. ¶ 19.)  The parties agree that the conviction for attempted murder is currently a deportable crime.

In 2001 Petitioner was arrested and convicted in New York for possession of marijuana.  The conviction was later vacated for constitutional errors. (Id. ¶ 13.)  The parties also agree that marijuana possession is not a deportable crime.  Petitioner was taken into ICE custody on March 18, 2008, when he appeared for a scheduled appearance in connection with an application for a new green card. (Id. ¶ 15.)  He was charged as removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") due to his prior aggravated felony conviction for attempted murder. (Gov't Ex. 1.)  Since his detention, Petitioner has been lodged in numerous

detention centers throughout the Eastern United States. (Petition ¶ 15.)  He is currently held at the Orange County Detention Facility in Goshen, New York (id. ¶ 1), but the Government has reserved its right to move him yet again for reasons of its convenience.

On March 19, 2008, an ICE Supervisory Deportation Officer determined that Petitioner was not eligible for a bond hearing. (Gov't Ex. 2.)  On July 8, 2008 Petitioner was ordered removed from the United States. (Id. ¶ 16.)  On March 6, 2009, Petitioner filed a motion for an emergency stay of removal and a motion to reopen with the Board of Immigration Appeals ("BIA"), which the BIA granted. (Id.)  Petitioner requested a bond hearing, which was scheduled for June 8, 2009 in front of an immigration judge.  Despite the fact that Petitioner's removable offense took place before the effective date of § 1226(c), the immigration judge, in reliance on a 2008 BIA decision, Matter of Saysana, 24 I. & N. Dec. 602 (BIA 2008), determined that Petitioner's release from custody for the 2001 marijuana conviction triggered mandatory detention and he denied Petitioner's request. (Id. ¶¶ 17, 19.)

Petitioner now brings this petition, asking the Court to assume jurisdiction over the matter; direct Respondents to release him from custody, or, in the alternative, to grant him a bond hearing; and to preliminarily enjoin Respondents from moving him to custody in another jurisdiction while he remains detained.

## DISCUSSION

This case is one in a series highlighting a conflict between the BIA and United States District Courts over the proper interpretation of the mandatory detention provision of § 1226(c). Facing nearly identical factual scenarios to the case at hand, every District Court which has considered this issue has concluded that "[t]he mandatory detention provision cannot be retroactively applied to aliens who were released from custody for removable offenses prior to

4

October 9, 1998—even if they are later released from custody for a nonremovable offense." Garcia, 615 F. Supp. 2d at 182; see also Hy v. Gillen, 588 F. Supp. 2d 122, 127 (D. Mass. 2008) ("[I]t is clear that the 'release' triggering mandatory detention must be related to the underlying qualifying offense."); Saysana v. Gillen, No. 08-11748 (RGS), 2008 WL 5484553, at *1 (D. Mass. Dec. 1, 2008); Thomas, 2008 WL 4793739, at *3-4.  The BIA takes the opposite view, interpreting the "when the alien is released" language in § 1226(c) in the broadest possible fashion to require mandatory detention whenever the alien was released from custody for a non-removable offense unrelated to the removable offense.

The BIA established its interpretation of § 1226(c) in 2008 in Matter of Saysana, 24 I. & N. Dec. 602.  Before adopting this broad interpretation, however, in 1999, Michael Pearson, the Executive Associate Commissioner for Field Operations Headquarters at the Immigration and Naturalization Service ("INS")[2] wrote an internal memorandum describing the agency's position on the "when the alien is released" language.  The memorandum noted that the "'release' must occur on or after October 9, 1998 from a criminal sentence 'based on a removable offense, regardless of the date of such conviction.'" Garcia, 615 F. Supp. 2d at 184 (quoting from July 12, 1999 Pearson memorandum).  Petitioner asks this Court to direct Respondents to grant him a bond hearing because the crime for which he was released from custody subsequent to 2001 is not a removable offense, and he was released from custody for the removable offense—attempted murder—before the effective date of § 1226(c).

Respondents argue that the Court should ignore the Pearson directive and give deference to the BIA's subsequent interpretation of § 1226(c) under the principles of Chevron U.S.A., Inc.

---

[2]   INS no longer exists under that name and its functions are now part of the Department of Homeland Security, the agency that contains ICE.

v. Nat'l Res. Def. Council, Inc., 467 U.S. 837 (1984).[3] This argument has been rejected by every court which has examined the issue. The District Courts' analyses of the statute are compelling, while the BIA's statutory interpretation is weak, contradictory, and in conflict with the clear meaning of the statute. See, e.g., Garcia, 615 F. Supp. 2d at 182-85; Hy, 588 F. Supp. 2d at 126-27. It is clear from the language of § 1226(c) that "when the alien is released" refers to release from custody for one of the enumerated removable crimes. Under Chevron's first step, this Court can interpret the statute and ascertain its clear intent at least as well as the BIA. There is no basis for going to Chevron step two to determine whether the BIA's construction is reasonable. Petitioner's release from custody after the effective date of § 1226(c) for a nonremovable offense does not make him subject to mandatory detention under the statute.

## CONCLUSION

For the reasons discussed, the Court GRANTS the petition for writ of habeas corpus in part. Respondents are directed to hold a prompt, individualized bond hearing for Petitioner. Respondents are restrained from removing Petitioner from this Court's jurisdiction during the pendency of his bond proceedings, including the hearing and any appeal therefrom. The Court does not reach Petitioner's claim as it relates to a violation of his due process rights.

Dated: New York, New York
August 13, 2008

SO ORDERED

PAUL A. CROTTY
United States District Judge
Part I

---

[3] To the extent that Respondents argue that the Court does not have jurisdiction because Petitioner has not exhausted his administrative remedies, the Court finds that it would be futile for Petitioner to appeal the immigration judge's decision denying him a bond hearing because the BIA has clearly stated how it interprets §1226(c). Accordingly, Petitioner's failure to exhaust his administrative remedies is excused. See Garcia, 615 F. Supp. 2d at 179-80; Hy, 588 F. Supp. 2d at 125-26; Cox v. Monica, No. 07 Civ. 0534, 2007 WL 1804335, at *3 (M.D. Pa. June 20, 2007).